**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2866
_____

JOHN M. SENSENIG; ALTA Z. SENSENIG,

Appellants

v.

COMMISSIONER OF INTERAL REVENUE
_____

On Appeal from the United States Tax Court
(Tax Court No. 16254-11)
Tax Court Judge:  Honorable David Gustafson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 22, 2018
Before:  JORDAN, RESTREPO and SCIRICA, Circuit Judges

(Opinion filed: January 23, 2018)
_____

OPINION[*]
_____

PER CURIAM

     John and Alta Sensenig appeal from the decision of the Tax Court sustaining the

Internal Revenue Service's ("IRS") determination of a tax payment deficiency for tax

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

year 2005.  We will affirm.

I.

John Sensenig is a licensed public accountant who owns his own tax preparation business and who has prepared hundreds of Federal tax returns over the years, including his own returns and the returns of businesses in which he has had an equity interest.  He also has engaged in business transactions totaling many millions of dollars.  At issue here are transfers that he made through his wholly owned business Conestoga Log Cabins Leasing, Inc. ("CLCL"), to three other companies in which he had an equity interest.  Those transfers totaled approximately $10.7 million.  For tax year 2005, the Sensenigs characterized the transfers as loans and deducted that amount as "wholly worthless" debt pursuant to 26 U.S.C. § 166(a)(1).  That deduction left the Sensenigs without income, and thus without tax liability, for that tax year.

The IRS, however, determined that the transactions actually were equity investments rather than loans and that the Sensenigs could not deduct them.  See 26 C.F.R. § 1.166-1(c).  The IRS further determined that disallowance of the deduction resulted in income to the Sensenigs that required the payment of approximately $1.5 million in taxes.  Thus, the IRS served the Sensenigs with a notice of deficiency requiring payment of that amount and assessing a penalty of approximately $300,000.

The Sensenigs appealed to the Tax Court, which held a trial and ultimately sustained the IRS's conclusions.  The Tax Court explained that the IRS's determination was presumed correct and that the Sensenigs bore the burden of proving that it was

2

erroneous.  See Crispin v. Comm'r, 708 F.3d 507, 514 (3d Cir. 2013).  The Tax Court concluded that the Sensenigs failed to carry that burden for two reasons.

First, the Tax Court agreed with the IRS that the transfers in question were equity investments rather than loans.  In doing so, the Tax Court applied the factors identified in 26 U.S.C. § 385(b) and the factors that we first adopted in Fin Hay Realty Co. v. United States, 398 F.2d 694, 696 (3d Cir. 1968).  The Tax Court reasoned that, although Mr. Sensenig identified a handful of the transactions as loans in his own CLCL journal entries, the transactions bore no other indicia of true loans and instead more closely resembled equity investments, which do not qualify as loans.  See 26 C.F.R. § 1.166-1(c). Among other things, the transfers were not made pursuant to any written agreement providing for repayment of the principal or payment of interest, Mr. Sensenig never made any demands for repayment, and the transfers were designed to benefit Mr. Sensenig's equity interests in the transferee companies.

Second, the Tax Court concluded that, even if the transfers had been loans, the Sensenigs were not entitled to deduct them for tax year 2005 because the Sensenigs did not prove that the alleged loans became "wholly worthless" within that year.  Among other things, the Tax Court reasoned that the transferee companies continued to exist after 2005 and that the Sensenigs presented no evidence regarding the financial conditions of those companies at the close of that year.  The Tax Court also reasoned that Mr. Sensenig continued to transfer money to the companies thereafter, which strongly suggested that even he did not believe that the transfers he sought to deduct for tax year 2005 (be they

3

loans or equity investments) had become wholly worthless.

Thus, the Tax Court sustained the IRS's determination that the Sensenigs were not entitled to deduct the transfers at issue and that they owed approximately $1.5 million in tax as a result. The Tax Court also sustained the IRS's imposition of a penalty. The Sensenigs appeal pro se.[1]

## II.

We will affirm for the reasons that the Tax Court thoroughly explained. We briefly address three issues that the Sensenigs raise on appeal. First, the Sensenigs assert that the Tax Court erred in determining that the transfers were not loans because "[t]he loans were accounted for in book entries by both the lender and the borrowing entities. Interest was calculated and booked. Borrowings and repayments were also consistently booked over the years as loans and not as equity." (Appellant's Br. at 3.) The Sensenigs, however, do not cite any evidence of record to support these assertions. The Tax Court concluded that only a handful of Mr. Sensenig's own CLCL journal entries identified relevant transfers as loans, and it properly concluded that those entries were not

---

[1] We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1), and venue is proper pursuant to 26 U.S.C. § 7482(b)(1)(A). The Sensenings do not challenge the Tax Court's conclusion that they owe a penalty, and Mr. Sensening instead conceded below that "If I owe the tax, I owe the penalty in my opinion." Thus, we review only the Tax Court's conclusions that the Sensenings failed to prove that the transactions at issue were loans or that they became wholly worthless in 2005. Those conclusions are factual findings that we review only for clear error. See Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.), 432 F.3d 448, 456-57 (3d Cir. 2006) (loans); Diamond Bros. Co. v. Comm'r, 322 F.2d 725, 730 (3d Cir. 1963) (same); Cole v. Comm'r, 871 F.2d 64, 66-67 (7th Cir. 1989) (worthlessness). Our review of legal issues is plenary. See Crispin,

4

determinative in light of the attributes of the transactions considered as a whole.  See

Geftman v. Comm'r, 154 F.3d 61, 70 & n.13 (3d Cir. 1998); Diamond Bros. Co., 322

F.2d at 732.

Second, the Sensenigs argue that they used book entries rather than promissory

notes to document the alleged loans and that "[t]here is no law that [we] know that

requires a certain form of record keeping to prove a loan."  (Appellant's Br. at 6.)  This

argument fails to acknowledge the substance of the Tax Court's decision.  The Tax Court

noted that the purported loans were not evidenced by promissory notes, but it went on to

conclude that, the handful of journal entries aside, the purported loans bore no other

objective indicia of loans and the economic realities of the transactions suggested that

they were intended as equity investments instead.  See Geftman, 154 F.3d at 68.  The Tax

Court applied the proper legal framework in reaching that conclusion, and the Sensenigs

have not raised anything calling it into question.

Finally, the Sensenigs note that they are Mennonites, that they obtained the funds

in question from an investment pool of Mennonite and Amish clients, and that those

clients orally instructed Mr. Sensenig to forward the funds as loans rather than equity

investments so that the clients would not be "yoked together with nonbelievers" as

prohibited by 2 Corinthians 6:14.  The Sensenigs cite no evidence to this effect, and this

argument undercuts their position in any event.  As the Tax Court noted, the transactions

between Mr. Sensenig and his Mennonite and Amish clients were structured as loans and

708 F.3d at 514.

were evidenced by demand notes providing for an interest rate. The transactions at issue here, by contrast, were not. And even if Mr. Sensenig subjectively intended for those transactions to be loans, he did not introduce any evidence regarding the intent of the transferee companies and the evidence as a whole overwhelmingly suggests that the transactions were equity investments instead.

III.

For these reasons, we will affirm the judgment of the Tax Court.